UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| RUSSELL BRANDS, LLC, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No.: 1:16-cv-<u>12-GNS</u> |
| | ) | |
| PIK PRODUCTS, LLC, | ) | **COMPLAINT** |
| Defendant. | ) | |

Plaintiff Russell Brands, LLC ("Russell"), for its Complaint against defendant PIK Products, LLC ("PIK") states as follows:

## INTRODUCTION

1. This is an action for trademark infringement, breach of contract and unfair competition arising from PIK's breach of the Trademark License Agreement between the parties and its improper use of Russell's registered trademarks, which has caused and may still be causing damage to Russell's brands, and confusion and damage to consumers. Russell seeks damages, injunctive relief, attorneys' fees, interest and all other relief to which it may be entitled.

## PARTIES, JURISDICTION AND VENUE

2. Plaintiff Russell Brands, LLC is a Delaware limited liability company with its principal place of business in Bowling Green, Warren County, Kentucky. Russell has a single member that is a corporation organized under the laws of Delaware.

3. Defendant PIK Products, LLC is a New York limited liability company with a principal place of business at 29 Dry Hill Road, Norwalk, Connecticut 06852.

4. This action arises under the trademark laws of the United States under the Lanham Act, 15 U.S.C. § 1051 *et seq.* It also arises under state law.

5. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 (actions arising under the Lanham Act), 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332(a) (diversity of citizenship) as the amount in controversy exceeds $75,000 excluding interest and costs, and 28 U.S.C. § 1338 (original jurisdiction over trademark and unfair competition claims).

6. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the breach of contract claim and any other cause of action arising under state law, because these claims are so related to Russell's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

7. PIK is subject to the personal jurisdiction of this Court because it has purposefully availed itself of the benefits of doing business in the Commonwealth of Kentucky by transacting business in Kentucky, pursuant to Kentucky's long-arm statute, KRS §454.210, and pursuant to PIK's contractual consent in Section 9.4(a) of the Trademark License Agreement to the exclusive jurisdiction of the federal and state courts of the Commonwealth of Kentucky. A true and accurate copy of the Trademark License Agreement (the "License Agreement") is attached to this Complaint as Exhibit 1.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b), as well as pursuant to PIK's contractual consent in Section 9.4(a) of the License Agreement to the exclusive jurisdiction of the federal and state courts of the Commonwealth of Kentucky.

**FACTUAL BACKGROUND**

9. Russell is a leading manufacturer and marketer of branded sports equipment and athletic, active and casual apparel. Russell markets its goods in the United States, Canada and other countries worldwide under a variety of well-known and well-respected marks, including "Dudley," "Spalding" and "True to the Game."

10. Russell owns the rights in the following marks (the "Marks"), which are duly registered, or for which applications for registration are currently pending, with the United States Patent and Trademark Office on the Principal Register for use in connection with the following goods:

| REGISTRATIONS | | |
|---|---|---|
| **MARK** | **REG NO. / APP. NO.** | **GOODS** |
| SPALDING | Reg. No. 1,880,728 | Golf balls, golf clubs, golf bags and stands; basketballs, footballs, soccer balls, volleyballs, tennis balls, racquetballs, squash balls, handballs, baseballs, softballs; tennis racquets, racquetball racquets, squash racquets, badminton racquets; tennis, squash and racquetball bumpers, grommets, grips, strings and covers; baseball and softball gloves, bats, and bat bags, in International Class 28. |
| SPALDING (with S logo) | Reg. No. 3,280,583 | Sporting articles, namely basketballs, volleyballs, soccer balls, footballs, basketball backboards, baseballs, golf balls, golf tees, golf clubs, golf club heads, golf bags, golf bag covers, tennis balls, tennis rackets, tennis racket covers, tennis racket strings, tennis racket presses, and tennis uprights, in International Class 28. |
| S (logo) | Reg. No. 3,299,083 | Sporting articles, namely, basketballs, volleyballs, soccer balls, footballs, basketball backboards, baseballs, golf balls, golf clubs, golf tees, tennis balls, tennis rackets, and tennis nets, in International Class 28. |
| SPALDING (with S logo) | Reg. No. 4,318,242 | All purpose sport bags; all-purpose athletic bags; backpacks; briefcases; duffle bags; luggage; roll bags, in International Class 18. |

| | | |
|---|---|---|
| SPALDING (logo) | Reg. No. 4,321,777 | Bags specially adapted for sports equipment; baseball gloves; batting gloves, in International Class 28. |
| SPALDING | Reg. No. 4,321,817 | All purpose sport bags; all-purpose athletic bags; backpacks; briefcases; duffle bags; luggage; roll bags; sports bags, in International Class 18. |
| DUDLEY | Reg. No. 1,083,672 | Softballs, baseballs, baseball and softball bats and batting gloves, in International Class 28. |
| DUDLEY (logo) | Reg. No. 2,170,037 | Softballs, softball gloves, softball bats, and batter's gloves, in International Class 28. |
| TRUE TO THE GAME | Reg. No. 4,318,241 | All purpose sport bags; all-purpose athletic bags; backpacks; briefcases; duffle bags; luggage; roll bags; sports bags, in International Class 18. |
| TRUE TO THE GAME | Reg. No. 4,321,341 | Backboards for basketball; balls for sports; baseball gloves; basket balls; basketball goal sets; basketball nets; foot balls; nets for sports; soccer balls; volley balls; volleyball game playing equipment; volleyball nets; volleyballs, in International Class 28. |
| **APPLICATIONS** | | |
| SPALDING | App. No. 85606807 | Batting tees; nets for ball games; sports training equipment namely quick-assembly portable multi-sport practice nets; baseball bases; baseball and softball glove lacing kits; baseball and softball glove conditioning oil; handle grips for sporting equipment; grip tape for baseball and softball bats; pine tar rags; rosin bags; rosin used by athletes; athletic sporting goods, namely, under-eye grease for reducing glare; body-training apparatus and devices for physical exercises, namely baseball and softball bats and baseball and softball swing training aids; baseball plate brushes; pitch counters; ball pitching machines; baseball and softball training apparatus used to increase hitting performance and improve batters' swing, to increase arm strength and power, and to improve hand-eye coordination and reaction time; athletic equipment, namely training devices to be worn on the body for support; baseball training devices comprised of a baseball positioned on a cord that is attached to a stationary object on either end; |

- 4 -

| | | |
|---|---|---|
| | | baseball training devices comprised of a softball positioned on a stationary tee; softball training devices comprised of a softball positioned on a cord that is attached to a stationary object on either end; softball training devices comprised of a softball positioned on a stationary tee; baseball and softball batting training equipment, namely, training bats, weighted baseballs and softballs, bat weights, reaction baseballs and reaction softballs, baseball and softball stick swing trainers, bat handle resistance trainers, baseball and softball training targets, baseball and softball bat sleeves, automatic baseball and softball feeders, in International Class 28. |
| Ⓢ | App. No. 85606835 | Batting tees; nets for ball games; sports training equipment namely quick-assembly portable multi-sport practice nets; baseball bases; baseball and softball glove lacing kits; baseball and softball glove conditioning oil; handle grips for sporting equipment; grip tape for baseball and softball bats; pine tar rags; rosin bags; rosin used by athletes; athletic sporting goods, namely, under-eye grease for reducing glare; body-training apparatus and devices for physical exercises, namely baseball and softball bats and baseball and softball swing training aids; baseball plate brushes; pitch counters; ball pitching machines; baseball and softball training apparatus used to increase hitting performance and improve batters' swing, to increase arm strength and power, and to improve hand-eye coordination and reaction time; athletic equipment, namely training devices to be worn on the body for support; baseball training devices comprised of a baseball positioned on a cord that is attached to a stationary object on either end; baseball training devices comprised of a softball positioned on a stationary tee; softball training devices comprised of a softball positioned on a cord that is attached to a stationary object on either end; softball training devices comprised of a softball positioned on a stationary tee; baseball and softball batting training equipment, namely, training bats, weighted baseballs and softballs, bat weights, reaction baseballs and reaction softballs, baseball and softball stick swing trainers, bat handle resistance trainers, baseball and softball training targets, baseball and softball bat sleeves, automatic baseball and softball feeders, in International Class 28. |

| | | |
|---|---|---|
| TRUE TO THE GAME | App. No. 85606857 | Batting tees; nets for ball games; sports training equipment namely quick-assembly portable multi-sport practice nets; baseball bases; baseball and softball glove lacing kits; baseball and softball glove conditioning oil; handle grips for sporting equipment; grip tape for baseball and softball bats; pine tar rags; rosin bags; rosin used by athletes; athletic sporting goods, namely, under-eye grease for reducing glare; body-training apparatus and devices for physical exercises, namely baseball and softball bats and baseball and softball swing training aids; baseball plate brushes; pitch counters; ball pitching machines; baseball and softball training apparatus used to increase hitting performance and improve batters' swing, to increase arm strength and power, and to improve hand-eye coordination and reaction time; athletic equipment, namely training devices to be worn on the body for support; baseball training devices comprised of a baseball positioned on a cord that is attached to a stationary object on either end; baseball training devices comprised of a softball positioned on a stationary tee; softball training devices comprised of a softball positioned on a cord that is attached to a stationary object on either end; softball training devices comprised of a softball positioned on a stationary tee; baseball and softball batting training equipment, namely, training bats, weighted baseballs and softballs, bat weights, reaction baseballs and reaction softballs, baseball and softball stick swing trainers, bat handle resistance trainers, baseball and softball training targets, baseball and softball bat sleeves, automatic baseball and softball feeders, in International Class 28. |

True and correct copies of the registration certificates or applications (as applicable) and status page printouts from the United States Patent and Trademark Office internet website identifying the Marks are attached to this Complaint as collective <u>Exhibit 2</u>.

11. Goods bearing the marks have enjoyed widespread popularity among consumers, and Russell has invested substantial time, money and effort to promote the goods and Marks used in connection with those goods.

12. PIK markets and sells baseball and softball accessories and baseball and softball training aids, including batting tees, nets, and pitching machines.

13. Russell and PIK entered into the License Agreement, effective July 1, 2012 (Ex. 1).

14. The License Agreement granted PIK Products the right and license to use the Marks in connection with the manufacture, marketing, distribution and sale of batting tees, nets, baseball and softball accessories, pitching machines, and baseball and softball training aids under the "Spalding," "Dudley" and "True to the Game" brands in the United States and Canada to baseball specialty accounts, team dealers, sporting goods dealers, and mass merchants and through PIK and Russell e-commerce websites.

15. In consideration for the right and license granted by Russell, PIK agreed, among other things, to pay Russell royalties on a quarterly basis equal to specified percentages of its net sales of goods sold under the Marks. PIK also agreed to pay Russell guaranteed minimum royalties in the following amounts:

| | |
|---|---|
| Year 1 (July 1, 2012 – December 31, 2013) | $25,000 |
| Year 2 (January 1, 2014 – December 31, 2014) | $35,000 |
| Year 3 (January 1, 2015 – December 31, 2015) | $45,000 |

License Agreement (Ex. 1), §§ 4.1, 4.2 & Exhibit B.

16. The License Agreement provided that if the royalties paid by PIK on its net sales failed to equal or exceed the guaranteed minimum royalties for any year, PIK would pay Russell the amount necessary to compensate for that shortfall with PIK's regular July royalty payment. See License Agreement (Ex. 1), § 4.2.

17. The License Agreement also provided that if Russell terminated the Agreement, all unpaid royalties due on Licensee's net sales and all guaranteed minimum royalties "will become immediately due and payable as liquidated damages, notwithstanding the Year otherwise specified for payment." License Agreement (Ex. 1), § 7.1(e).

18. The License Agreement required that PIK meet certain product standards, including standards for high quality, for the goods it marketed and sold under the Marks.

19. The License Agreement provided that it would terminate on December 31, 2015, unless terminated earlier in accordance with the termination provisions set out in Section 7 of the License Agreement. License Agreement (Ex. 1), Exhibit A.

20. Under Section 7.1(a) of the License Agreement, Russell was entitled to immediately terminate the License Agreement "if [PIK] has been in breach or default three (3) or more times during a period of twelve (12) consecutive months … regardless of whether the breaches or defaults have been cured."

21. By early 2014, PIK had failed to meet its obligations under the License Agreement by, among other things, failing to timely pay royalties, failing to timely provide required quarterly sales reports, and failing to provide a required marketing plan.

22. Through the end of 2013, PIK had reported net sales of only $118,425.17 (although it had projected sales of $750,000 (License Agreement (Ex. 1), Exhibit B). PIK paid royalties of only $4,039.90. Three of its four quarterly payments were late. A true and accurate copy of a spreadsheet showing PIK's reported sales and royalty payments is attached as Exhibit 3.

23. By letter dated March 5, 2014 (the "Termination Notice"), Russell exercised its right of immediate termination under Section 7.1(a). A true and accurate copy of that letter is attached as Exhibit 4. The Termination Notice stated that PIK had breached the License Agreement by failing to timely pay royalties, failing to timely provide required quarterly sales reports, and failing to provide a required marketing plan. The Termination Notice demanded payment of all amounts due to Russell under the License Agreement.

24.     Pursuant to the License Agreement, upon termination, PIK was required to "immediately discontinue manufacture, advertising, sale and distribution" of the products sold under the Marks and to discontinue any use of the Marks.  Because Russell's grounds for terminating the License Agreement included failure to timely pay royalties, PIK did not have any right to sell off the products, and PIK was required to destroy any inventory of products and certify to Russell in writing that the destruction has occurred.  License Agreement (Ex. 1), § 7.2.

25.     Pursuant to the License Agreement, PIK owes Russell the following:

| | |
|---|---|
| Year 1 guaranteed minimum royalty | $ 25,000 |
| Year 2 guaranteed minimum royalty | $ 35,000 |
| Year 3 guaranteed minimum royalty | $ 45,000 |
| Subtotal | $105,000 |
| Less royalties paid (rounded) | $   4,040 |
| Total | $100,960 |

26.     In addition, pursuant to Section 9.7 of the License Agreement, PIK owes Russell interest at the rate of 1.5% per month on those amounts and any other amounts due under the License Agreement but not paid when due, running from the date payment was due.

27.     PIK has not paid the amounts due to Russell.

28.     Based on information provided by PIK, PIK had over 10,000 items bearing the Marks in inventory as of January 2014.

29.     On information and belief, PIK had goods bearing the Marks in inventory when the License Agreement terminated on March 5, 2014.

30.     PIK has failed to certify that it destroyed its inventory of goods bearing the Marks and furthermore has failed even to respond to Russell's requests for information about the status of its inventory.

31. To the extent PIK retained goods bearing the Marks and/or used the Marks to market or sell goods after the License Agreement terminated on March 5, 2014, PIK made unauthorized and infringing use of the Marks.

32. In Section 9.11 of the License Agreement, PIK agreed that its failure to stop use of the Marks at the termination of the License Agreement would result in immediate and irreparable damage to Russell and that there is no adequate remedy at law for that failure. To the extent that PIK failed to cease use of the Marks upon termination of the License Agreement, Russell suffered irreparable damage for which there is no adequate remedy at law.

33. Under Section 9.7 of the License Agreement, the prevailing party in any action brought to enforce any provision of the agreement is entitled to reimbursement from the other party for the cost and expense of the action, including reasonable attorneys' fees.

## COUNT I – DECLARATORY JUDGMENT

34. Russell realleges the other paragraphs of this Complaint as if fully set out in this Count.

35. This action involves an actual controversy between the parties, within the scope and meaning of the federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*

36. Despite termination of the License Agreement and requests from Russell for PIK to comply with its post-termination obligations, PIK has failed to comply with its post-termination obligations, including its obligations to pay the amounts due (with contractual interest), to cease use of the Marks upon termination, and to certify the destruction of remaining inventory bearing the Marks.

37. Russell is entitled to a declaratory judgment that the License Agreement was terminated on or about March 5, 2014 pursuant to the Termination Notice due to PIK's breaches of the License Agreement.

38. Russell is also entitled to a declaratory judgment that PIK is not authorized to use the Marks and must comply with the terms of the License Agreement including payment of all amounts due and performance of all post-termination obligations, including certifying that it destroyed all inventory bearing the Marks that was in its possession or control as of March 5, 2014, or if PIK cannot so certify, ordering PIK to account for all items bearing Russell's Marks, to turn over to Russell any such items that remain in PIK's possession or control, and to provide a sworn declaration giving a detailed explanation of how PIK disposed of all other such items and an accounting of any consideration that PIK received for them.

## COUNT II – BREACH OF CONTRACT

39. Russell realleges the other paragraphs of this Complaint as if fully set out in this Count.

40. The License Agreement was a valid contract between Russell and PIK.

41. PIK materially breached the License Agreement by the actions set out above, including its failure to timely pay royalties, its failure to timely provide required quarterly sales reports, and its failure to provide a required marketing plan.

42. PIK has also materially breached the License Agreement by failing to fulfill its post-termination obligations, including its obligation to pay the amounts due (with contractual interest), to cease use of the Marks and to certify that it destroyed all inventory bearing the Marks that was in its possession or control as of March 5, 2014.

43. Russell fulfilled its material obligations under the License Agreement.

44. Pursuant to Section 9.7, Russell is entitled to reimbursement by PIK for its costs and expenses for this action, including its reasonable attorneys' fees.

45. As a direct result of PIK's breach, Russell has suffered damage and is entitled to recover an amount sufficient to compensate it for that damage, including the amount of $100,960, plus interest and costs and expenses for this action (including reasonable attorneys' fees) as set out in Section 9.7 of the License Agreement and any additional damages that may be proven in this action.

46. As a direct result of PIK's failure to stop use of the Marks upon termination of the License Agreement, Russell has suffered irreparable harm for which there is no adequate remedy at law, and Russell is entitled to an injunction commanding specific performance of PIK's post-termination obligations to cease use of the Marks and to certify that it destroyed all inventory bearing the Marks that was in its possession or control as of March 5, 2014 or if PIK cannot so certify, ordering PIK to account for all items bearing Russell's Marks, to turn over to Russell any such items that remain in PIK's possession or control, and to provide a sworn declaration giving a detailed explanation of how PIK disposed of all other such items and an accounting of any consideration that PIK received for them.

## COUNT III – TRADEMARK INFRINGEMENT

47. Russell realleges the other paragraphs of this Complaint as if fully set out in this Count.

48. PIK's unauthorized use of Russell's Marks in connection with goods is likely to cause confusion and mistake and to deceive consumers as to the source or origin of those goods in violation of 15 U.S.C § 1114(1).

49. PIK's unauthorized use of Russell's Marks in connection with goods is also likely to, and does, suggest an affiliation, connection or association between Russell and PIK's goods that does not actually exist.

50. The acts set out above infringe Russell's Marks and have caused damage to Russell and to the business and goodwill symbolized by each of Russell's Marks.

51. PIK's actions were undertaken deliberately and willfully, and with knowledge of Russell's ownership of the Marks. As a result, this is an exceptional case with the meaning of 15 U.S.C. §1117.

52. PIK's actions have caused and are causing irreparable harm to Russell, to its business, and to the goodwill represented thereby. Unless restrained, PIK's actions will cause further irreparable harm, leaving Russell no adequate remedy at law.

53. By reason of the foregoing, Russell is entitled to injunctive relief pursuant to 15 U.S.C. §1116 against PIK in order to restrain further acts of infringement by PIK.

54. Russell is also entitled to recover damages resulting from PIK's infringement, including actual damages, infringer's profits, treble damages, costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §1117.

### COUNT IV – UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN

55. Russell realleges the other paragraphs of this Complaint as if fully set out in this Count.

56. PIK's unauthorized use of Russell's Marks in connection with goods is also likely to, and does, suggest an affiliation, connection or association between Russell and PIK's goods that does not actually exist.

57. PIK's unauthorized use of Russell's Marks in connection with goods is a false designation of origin or false representation and utilizes a false description and representation in interstate commerce. PIK is falsely representing itself to consumers as a Russell licensee.

58. PIK's actions violate 15 U.S.C. § 1125(a).

59. PIK's actions have caused and will continue to cause irreparable injury to Russell if not restrained by this court. Russell has no adequate remedy at law, and therefore seeks injunctive relief under 15 U.S.C. § 1116 and such monetary relief as it may be entitled to pursuant to 15 U.S.C. § 1117, including actual and treble damages, costs and reasonable attorneys' fees.

WHEREFORE, Russell respectfully requests that this Court enter judgment in its favor and against PIK as follows:

1. Declaring that the License Agreement was terminated as of March 5, 2014 and that PIK is obligated to comply with all post-termination obligations;

2. Awarding damages sufficient to compensate Russell for PIK's breach of the License Agreement, in the amount of $100,960, plus interest as set out in Section 9.7 of the License Agreement, and any additional amounts that may be proven in this action;

3. Awarding damages for PIK's infringement of Russell's Marks pursuant to 15 U.S.C. § 1117, including actual and treble damages, infringer's profits, costs, expenses and attorneys' fees;

4. Preliminarily and permanently enjoining PIK and its agents, representatives, employees, assigns and all persons acting in concert or privity with them from using Russell's Marks, from further infringing Russell's Marks, from otherwise infringing, diluting or harming Russell's business reputation and/or its Marks, from suggesting any affiliation with Russell, and from competing unfairly with Russell;

5. Ordering PIK to certify that it destroyed all items bearing Russell's Marks that were in its possession or control as of March 5, 2014, or if PIK cannot so certify, ordering PIK to account for all items bearing Russell's Marks, to turn over to Russell any such items that remain in PIK's possession or control, and to provide a sworn declaration giving a detailed explanation of how PIK disposed of all other such items and an accounting of any consideration that PIK received for them;

6. Any other relief that may be necessary to effectuate or enforce the injunctive relief set out above;

7. Costs and attorneys' fees, pursuant to Section 9.7 of the Agreement and/or 15 U.S.C. § 1117;

8. Prejudgment and postjudgment interest;

9. Costs; and

10. Any and all other relief to which Russell may be entitled.

## JURY DEMAND

Russell demands a trial by jury on all issues so triable.

          ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
          1101 College Street; P.O. Box 770
          Bowling Green, KY 42102-0770
          Telephone: (270) 781-6500
          Facsimile: (270) 782-7782
          Email: kames@elpolaw.com


          *s/ E. Kenly Ames*_____
          E. KENLY AMES

          ATTORNEYS FOR PLAINTIFF
          RUSSELL BRANDS, LLC

Dated: February 10, 2016
2276617